UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------:
                                                       :
ACTORS EQUITY ASSOCIATION,                             :
                                                       :
                       Petitioner,        :            08 Civ. 02843 (LAK)
                                                       :
            -against-                     :
                                                       :
MATTHEW LOMBARDO, Individually,           :
And on Behalf of THE LOMBARDO             :
ORGANIZATION d/b/a TEA AT FIVE,           :
                                                       :
            Respondent.                   :
                                                       :
-------------------------------------------------------:

**PETITIONER'S MEMORANDUM OF LAW**

**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Hope A. Pordy
Spivak Lipton LLP
1700 Broadway, 21st Floor
New York, NY 10019
(212) 765-2100
(212) 765-8954 (f)
hpordy@spivaklipton.com

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................................ii

Preliminary Statement...............................................................................................................1

Statement of Facts.....................................................................................................................1

      Stephanie Zimbalist and Tea At Five......................................................................................1

      The Arbitration Proceedings..................................................................................................2

      The Arbitration Award...........................................................................................................3

Argument ..................................................................................................................................5

      I. An Arbitration Award is Entitled to a High Degree of Judicial Deference.......................6

      II. Arbitrator Brent's Arbitration Award is Entitled to Judicial Deference ..........................8

Conclusion ...............................................................................................................................11

TABLE OF AUTHORITIES

Ass'n. of Western Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc.,
221 F.3d 1085 (9th Cir. 2000) ........................................................................................6, 11


American Postal Workers Union, Milwaukee Local v. Runyon
185 F.3d 832 (7th Cir. 1999) ..................................................................................................7


Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242, 106 S. Ct. 2505 (1986)....................................................................................5


Banco de Seguros del Estado v. Mutual Marine Office, Inc.,
344 F.3d 255 (2d Cir. 2003).....................................................................................................7


Celotex Corp. v. Catrett,
 477 U.S. 317, 106 S. Ct. 2548 (1986)....................................................................................5


D.H. Blair & Co., Inc. v. Gottdiener,
462 F.3d 95 (2d Cir. 2006)......................................................................................................6


Eisenberg v. Ins. Co. of N. Am.,
815 F.2d 1285 (9th Cir. 1987) ................................................................................................5


Florasynth, Inc. v. Pickholz,
750 F.2d 171 (2d Cir. 1984).....................................................................................................6


Grammer v. Artists Agency
287 F.3d 886 (9th Cir. 2002) ..................................................................................................8


Major League Baseball Players Ass'n. v. Gervey,
532 U.S. 504, 121 S. Ct. 1724 (2001)..................................................................................6, 8


Michigan Family Resources, Inc. v. SEIU, Local 517M,
475 F.3d 746 (6th Cir. 2007) ..................................................................................................8

Saint Mary Home, Inc., v. Service Employees International Union, District 1199,
116 F.3d 41 (2d Cir. 1997)......................................................................................................7


United Paperworkers Int'l. Union, AFL-CIO v. Misco, Inc.,
484 U.S. 29 (1987).............................................................................................................6, 7


United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,
363 U.S. 593 (1960).................................................................................................................6

## PRELIMINARY STATEMENT

Petitioner Actors Equity Association ("Petitioner" or "Equity"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this memorandum of law in support of its Petition to Confirm Arbitration Award.[1]

## STATEMENT OF FACTS

The subject matter of this Arbitration is governed by the Agreement and Rules Governing Employment in Midsize Theatres ("the Midsize Theatre Agreement" or "the Rulebook"), effective April 24, 2005 through April 29, 2007.  Pet. Rule 56.1 Stmt. ¶1;[2] Pet. Ex. B.[3]  The Producer, Matthew Lombardo and the Lombardo Organization, LLC ("Respondent" or "Lombardo"), individually and collectively, agreed to be bound to the terms of the Rulebook through the execution of an Independent Producer's Agreement on August 22, 2006 for a production of the play "Tea At Five" at the Ordway McKnight Theatre in St. Paul, Minnesota.  Pet. Rule 56.1 Stmt. ¶2; Pet. Ex. C.

### Stephanie Zimbalist and Tea At Five

Lombardo hired Stephanie Zimbalist ("the Actor" or "Zimbalist") to play the role of Katharine Hepburn in a production of a one-woman play entitled "Tea At Five" scheduled to run at the Ordway McKnight Theatre in St. Paul, Minnesota from September 19, 2006 through October 1, 2006.  Pet. Rule 56.1 Stmt. ¶3.  As noted by the Arbitrator, Zimbalist has been a long-standing Equity member, and is a highly accomplished Actor who has had an extremely

---

[1] A copy of the Petition to Confirm Arbitration Award, dated March 12, 2008, with accompanying exhibits, is attached to Petitioner's Rule 56.1 Statement.

[2] References to Petitioner's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 are cited to herein as "Pet. Rule 56.1 Stmt. ¶ __."

[3] References to the Exhibits attached to Equity's Petition to Confirm Arbitration Award are cited to herein as "Pet. Ex. __, p. ___."

successful acting career in television and film.  Pet. Rule 56.1 Stmt. ¶4; Pet. Ex. A, pp. 20-21.

The Arbitrator found that Lombardo and Zimbalist (acting through her agents) memorialized the

terms of her employment at the Ordway Theatre in an Individual Contract and Rider.  Pet. Rule

56.1 Stmt. ¶5; Pet. Ex. A, p. 14.  Lombardo assumed responsibility for all contractual obligations

in connection with the St. Paul production of "Tea At Five" on behalf of the Lombardo

Organization and individually, as Guarantor.  Pet. Rule 56.1 Stmt. ¶¶2, 6; Pet. Ex. A ("Award of

Arbitrator").[4]  The Arbitrator noted that "[i]t was undisputed that Ms. Zimbalist performed all of

the obligations of the St. Paul run."  Pet. Rule 56.1 Stmt. ¶7; Pet. Ex. A, p. 13.

Through documentary evidence submitted by Equity during the arbitration, it was

established that Lombardo actually issued the performance checks due to Zimbalist in the full

amount of salary, less working dues, pursuant to the terms of her Individual Contract and Rider –

2 checks in the amount of $6,581.25 – plus a reimbursement check in the amount of $727.80 but

he admittedly stopped payment on those checks.  Pet. Rule 56.1 Stmt. ¶¶8, 9; Pet. Ex. A, pp. 5,

14, 23.    Lombardo also failed to pay the bill for the rental car he was obligated under the

Contract and Rider to provide Zimbalist at no cost.  Pet. Rule 56.1 Stmt. ¶10; Pet. Ex. A

("Supplemental Award"), p. 2.  Thus, it was clearly established – and uncontested – that

Lombardo did not pay Zimbalist the amounts owed to her under the Equity Rulebook and her

Individual Contract and Rider.

### The Arbitration Proceedings

Pursuant to Rule 5 of the Rulebook, Lombardo disputed a ruling issued by Equity on

December 7, 2006 (amending a prior ruling issued on November 21, 2006) and filed an

arbitration demand with the American Arbitration Association ("AAA").  Pet. Rule 56.1 Stmt.

---

[4] The "Award of the Arbitrator" consists of the first four unnumbered pages of the complete
Arbitration Award and Opinion, dated January 7, 2008, and is included as part of Exhibit A
annexed to the Petition.

¶11; Pet. Ex. A, pp. 5-6.  An arbitration hearing was originally scheduled for June 29, 2007 in

New York but was adjourned at Lombardo's request.  Pet. Rule 56.1 Stmt. ¶12; Pet. Ex. A, p. 6.

Thereafter, Equity elected to have the hearing in Los Angeles, and the Arbitrator issued a ruling

upholding Equity's right to determine the site of the arbitration pursuant to Rule 5(A).  Pet. Rule

56.1 Stmt. ¶13; Pet. Ex. A, p. 7.  The hearing was rescheduled for October 21, 2007 in Los

Angeles but was once again adjourned at Lombardo's request.  Pet. Rule 56.1 Stmt. ¶14.

Additional hearing dates were scheduled for November 19 and 20, 2007, in Los Angeles, and the

hearing ultimately took place on November 19, 2007.  Pet. Rule 56.1 Stmt. ¶15.  The Arbitrator

set December 12, 2007 as the due date for the submission of post-hearing briefs.  Both Equity

and Lombardo timely filed post-hearing briefs.  Pet. Rule 56.1 Stmt. ¶16; Pet. Ex. A, p. 9.

### The Arbitration Award

On January 7, 2008, the Arbitrator issued an Arbitration Opinion and Award.  Pet. Rule

56.1 Stmt. ¶17.  Relying on the evidence submitted by the parties during the November 19th

hearing, the Arbitrator found that Lombardo committed multiple breaches of the collective

bargaining agreement and violated the terms of the Individual Contract and Rider he had entered

into with Zimbalist.  Pet. Rule 56.1 Stmt. ¶18; Pet. Ex. A.

As a result of Respondent's multiple breaches of the applicable agreements, the

Arbitrator directed Lombardo to pay within ten (10) days of the date of the Award the following

amounts: (1) $15,000.00 in salary and $727.80 in reimbursed expenses to Zimbalist (less any

amounts previously paid after payments by the original salary and expense checks were

stopped); (2) $33,000.00 to Actors Equity Association as liquidated damages for violations of the

Midsize Theatre Agreement for failure to promptly remit accurate dues, pension deductions and

accompanying reports, and for failure to submit weekly box office receipt statements, a program

of the production, and box office statements; and (3) $16,200.00 to the Equity-League Pension

Fund for unremitted pension contributions ($1,200.00) and liquidated damages ($15,000.00); and

(4) $18,000.00 to the Actors Equity Foundation as liquidated damages for making false

statements, for intentionally deceiving Equity regarding the actual contractual salary for

Zimbalist and Stage Manager Christine Catti, and for concealing Zimbalist's Individual Contract

Rider in violation of the Midsize Theatre Agreement.  Pet. Rule 56.1 Stmt. ¶¶18-19; Pet. Ex. A

("Award of Arbitrator").  See also Pet. Ex. A, pp. 33-37.

Additionally, the Arbitrator directed that: "All such payments shall be augmented by

interest at the rate of six per cent per annum from the date such payments were originally due

and owing until the date of this Award, and thereafter at the rate of nine per cent per annum until

all sums ordered pursuant to this Award have been paid in full."  Pet. Rule 56.1 Stmt. ¶20; Pet.

Ex. A ("Award of Arbitrator").  See also Pet. Ex. A, p. 35.  The Arbitrator further directed that:

"In the event that either party finds it necessary to undertake further proceedings before this

Arbitrator, or elsewhere, to enforce any aspect of this Award, the amounts recovered and the

costs of enforcement shall be payable by the party against whom enforcement is successfully

sought" and if one party pays the full cost of the Arbitrator's fees and expenses such party shall

be entitled to recover from the non-paying party its one-half share plus costs and counsel fees.

Pet. Rule 56.1 Stmt. ¶21; Pet. Ex. A ("Award of Arbitrator").  See also Pet. Ex. A, p. 36.

On January 22, 2008, the Arbitrator issued a Supplemental Award, upon motion by

Equity, to correct two inadvertent clerical errors in the original Award.  Pet. Rule 56.1 Stmt. ¶22;

Pet. Ex. A ("Supplemental Award").  Respondent advised the Arbitrator that he "agree[d]

entirely" with Equity's motion and asked that the requested changes be made.  The Arbitrator

granted the motion and amended the Award to add to the payment owed to Zimbalist the amount

of $806.19 for reimbursement of rental car expenses, and to clarify that Lombardo did not owe any monies to Stage Manager Christine Catti pursuant to her Individual Contract. Pet. Rule 56.1 Stmt. ¶22; Pet. Ex. A ("Supplemental Award").

By letter dated February 1, 2008, Equity demanded that Respondent pay the amounts due under the Awards in the amount of $88,626.08 (including the 6% interest). Pet. Ex. E. Respondent did not make any payment or otherwise respond. Pet. Rule 56.1 Stmt. ¶23. By letter dated February 15, 2008, Equity made a second demand to Lombardo for payment to Respondent and adjusted the amount owed to $89,290.77 to reflect the enhanced interest rate of 9%. Pet. Ex. F. Respondent did not make any payment or otherwise respond. Pet. Rule 56.1 Stmt. ¶24.

Since Respondent has failed and refused to voluntarily satisfy the Awards in the time since they have been issued, Equity filed this action seeking the relief awarded by the Arbitrator in his Opinion and Award and Supplemental Award. Respondent appeared in this action by and through the filing of an Answer wherein he stated: "I admit I owe Actress Stephanie Zimbalist approximately $17,000.00."[5]

## ARGUMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is properly granted when (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 252, 106 S. Ct. 2505, 2509-10, 2512 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

---

[5] A copy of Respondent's Answer, dated May 19, 2008, is attached to Petitioner's Rule 56.1 Statement.

District courts may treat a petition to confirm an arbitration award as a motion for summary judgment.  D.H.Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).  A petition to review an arbitration award frequently presents an issue of law rather than one of fact, and thus, "the confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984).

The sole issue in this proceeding is whether the Award issued by the Arbitrator presents grounds for judicial review.  Because no such grounds exist, the Award should be confirmed.

## I.       An Arbitration Award is Entitled to a High Degree of Judicial Deference

It is well-settled that courts have a very limited role in reviewing labor arbitration awards: "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements.  The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960). Judicial review of a labor arbitration decision pursuant to a collective bargaining agreement "is very limited."  Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S.Ct. 1724, 1728 (2001); United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987). An arbitrator's award is legitimate "so long as it draws its essence from the collective bargaining agreement."  Id. at 597.

For an arbitrator's award to sufficiently draw its essence from the CBA, it must only be a "plausible interpretation" of the collective bargaining agreement.  Ass'n of Western Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc., 221 F.3d 1085, 1090 (9th Cir. 2000) ("Local 78").  "As long as the arbitrator is even arguably construing or applying the contract and acting

within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). In fact, an arbitration award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003) (quoting Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 704 (2d Cir. 1978)). "It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said to not draw its essence from the collective bargaining agreement." American Postal Workers Union, Milwaukee Local v. Runyon, 185 F.3d 832, 835 (7th Cir. 1999). The Second Circuit has explained the standard as follows:

> When parties to an agreement bargain for an arbitrator's decision, that bargain may not be upset by a court simply because it deems the decision incorrect. The court may not substitute its view for that of the arbitrator nor may it even review the award for clear error. When an arbitrator explains his conclusions in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result.

Saint Mary Home, Inc. v. Service Employees International Union, District 1199, 116 F.3d 41, 44 (2d Cir. 1997) (internal citations omitted).

"Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." Misco, 484 U.S. at 37. "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Id. at 36. "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's

7

'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001); Michigan Family Resources, Inc. v. SEIU, Local 517M, 475 F.3d 746, 756 (6th Cir. 2007) ("An arbitrator does not exceed his authority every time he makes an interpretive error.")

Furthermore, courts "presume that factual findings underlying a labor arbitration award are correct, rebuttable only be a clear preponderance of the evidence." Grammer v. Artists Agency, 287 F.3d 886, 891 (9th Cir. 2002). Consistent with this body of caselaw, this Court should summarily confirm the Arbitration Award issued by Arbitrator Brent.

## II.    Arbitrator Brent's Arbitration Award is Entitled to Judicial Deference

Arbitrator Brent correctly found that Lombardo committed multiple breaches of the Equity Rulebook in connection with his employment of Zimbalist in a production of "Tea At Five" at the Ordway Theatre in St. Paul, Minnesota. Not only did the Arbitrator find that Lombardo failed to pay her the salary and expenses she was due under the Equity Rulebook as well as her Individual Contract and Rider, but he also violated numerous other provisions of the Rulebook which govern the terms and conditions of employment of Equity members and allow Equity to monitor compliance with the Rulebook's provisions.

In fact, the Arbitrator found that Lombardo admitted to nearly all the contract breaches alleged by Equity during the arbitration:

> In his sworn testimony during the arbitration hearing, Mr. Lombardo admitted committing multiple other breaches of the Equity Rule Book, including stopping payment on salary checks, failure to remit pension contributions and reports, failure to submit a bond as required, and failure to remit deducted dues in a timely manner within ten days, among other infractions. Lombardo admitted falsely representing to Equity that Ms. Zimbalist agreed to perform "Tea at Five" at the Ordway McKnight Theatre in St. Paul, Minnesota for the salary of $577 per week, and that the dues to be deducted and pension payments to be remitted were properly

8

> based on this salary.  Lombardo also falsely averred that Ms.
> Zimbalist conspired with Lombardo to conceal the actual weekly
> salary of $7500 from Equity.

Pet. Ex. A, pp. 18-19.  See also Pet. Ex. A, p. 21 ("In his testimony, Mr. Lombardo admitted to

multiple breaches of the Rule Book set forth in Section 8(A).").

Consistent with his admissions at the arbitration hearing, Lombardo averred in his

Answer that he "owes Actress Stephanie Zimbalist approximately $17,000.00."  Nearly all the

contract breaches alleged by Equity at arbitration stem from Lombardo's failure to abide by his

contractual obligations to Zimbalist under her Individual Contract and those dictated by the

Rulebook – as well as his failure to deal honestly with Equity in connection with his employment

of Zimbalist – and therefore, his admission in his Answer is tantamount to an admission of his

full liability under the Arbitration Award.

Due to the undisputed multiple breaches committed by Lombardo, the Arbitrator found

that "imposing penalties established by the Rule Book for such material breaches based on this

misconduct is fully justified."  Pet. Ex. A, p. 19.  The Arbitrator carefully reviewed each

allegation made by Equity and appropriately exercised his authority to impose penalties for the

multiple infractions.    The Arbitrator calculated damages in accordance with the Rulebook,

specifically Rule 8:

> Rule 8(A) Breaches.  A breach shall include, but shall not be limited to, the following:
>
> (1) Infraction of any provision contained in the Actor's employment contract;
>
> (2) Infraction of any Equity rule incorporated into the employment contract;
>
> (3) Any false statement made by the Producer or Actor in connection with the employment contract or the security agreement relating thereto;
>
> (4) Employment of any Actor under any form of contract other than an Equity form of contract; and

    (5) Failure to give or deposit security at the time and in the form and amount required by Equity.

    Rule 8(B) <u>Attempted Breaches</u>.

    (2) Should any Producer be found in an Arbitration procedure to have engaged in an attempt to breach any term of any employment contract, said Producer agrees that such conduct in itself shall be a breach of the Producer's employment agreements with Actors, <u>entitling any such Actors to recover from the Producer, Equity consenting, the actual amount of damages resulting from the breach, or if no basis of calculation exists, a sum equal to two weeks' contractual salary as liquidated damages.</u>

(emphasis added).

    Rule 8(C) <u>Remedies</u>.

    (2)  In the event of default of breach by the Producer under the provisions of (A)(4) or (A)(5), and with Equity's consent, the Actor shall be released from the obligation to work and may terminate employment if the Actor should so desire.  <u>The Producer shall pay the Actor in full for all services rendered plus any other sums due the Actor under the terms of this Agreement or the Actor's individual employment contract.  If no basis of calculation for damages exists, the Producer shall pay the Actor a sum equal to two weeks of the Actor's contractual salary</u>.

(emphasis added).  Pet. Ex. B, pp. 9-10.

As stated herein there are no grounds that would warrant the setting aside of Arbitrator Brent's factual findings and legal conclusions.  Since Respondent admitted that he breached multiple provisions of the Rulebook and the Actor's Individual Contract and Rider, the Arbitrator's factual findings cannot be seriously challenged.  Moreover, the Arbitrator's imposition of penalties due to Respondent's contract breaches is derived from Rule 8 which provides for full payment to the Actor of all services rendered and/or liquidated damages for breaches which do not provide a clear basis for calculating damages. Pet. Ex. A, pp. 30-31.  The Arbitrator judiciously applied Rule 8's formula for damages, and awarded a remedy consistent

10

therewith.  The Arbitrator's remedy is, therefore, based on a "plausible interpretation" of Rule 8

and other applicable Rulebook provisions.  See Local 78, 221 F.3d at 1090.


## CONCLUSION

For the foregoing reasons, Equity respectfully requests that this Court grant its motion for

summary judgment, grant Equity's Petition to Confirm Arbitration Award, and grant such other

relief as it may deem just and proper, including but not limited to the accrued interest and

attorneys fees and costs.


Dated: New York, New York
       June 9, 2008

                                          SPIVAK LIPTON LLP


                                          By: /s/  Hope Pordy_____
                                                 Hope Pordy (HP 6253)
                                          1700 Broadway, 21st Floor
                                          New York, New York  10019
                                          Tel:  212.765.2100
                                          Fax:  212.541.5429
                                          hpordy@spivaklipton.com
                                          *Attorneys for Actors Equity Association*